# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AMERICA AERO GROUP, LLC, <br>     Plaintiff <br><br> v. <br><br> ZURICH AMERICAN INSURANCE COMPANY, <br>     Defendant | No. 23 CV 1861 <br><br> Judge Jeremy C. Daniel |

## MEMORANDUM OPINION AND ORDER

America Aero Group, LLC ("AAG") filed suit against Zurich American Insurance Company ("Zurich") seeking a declaratory judgment stating that Zurich wrongly denied coverage for losses that AAG's predecessor-in-interest incurred related to governmental shutdowns ordered in response to the novel coronavirus ("COVID-19") pandemic. (R. 1.)[1] Zurich has filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 9.) Because AAG's physical dispossession allegations are contradicted by its own attachments to the complaint, the motion to dismiss is granted.

## BACKGROUND[2]

In early 2020, COVID-19 became a global pandemic. (R. 1 ¶ 19); *Mashallah, Inc. v. West Bend Mut. Ins. Co.*, 20 F.4th 311, 317 (7th Cir. 2021). Governments

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

[2] "All facts properly pleaded are taken as true for purposes of the motion to dismiss." *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 584 (7th Cir. 2021).

worldwide responded by imposing shutdown orders that commanded individuals to shelter in place and temporarily closed all but the most essential businesses. *Id.* at 317-18; (*see, e.g.*, R. 1-4.) While these orders helped slow the virus' spread, they disrupted many businesses' day-to-day operations. (R. 1 ¶¶ 19-23.)

One such business was VAS Aero Services ("VAS"), a leading supplier of aviation parts to the global aircraft industry (*Id.* ¶ 12.) VAS operates distribution facilities across the world. (*Id.* ¶¶ 13-17.) Plaintiff AAG, VAS' successor-in-interest,[3] alleges that VAS' employees were barred from accessing its stock by the shutdown orders issued in the states of Washington and Florida, as well as in the United Kingdom. (*Id.* ¶¶ 9-10, 23-29.) AAG does not specify which products VAS' employees could not access, but nonetheless alleges that these products were valuable and time-limited. (*Id.* ¶ 18.) AAG alleges that VAS' inability to access the aviation parts while the shutdown orders were in place constituted a "loss" under an insurance policy issued by Defendant Zurich for the period of April 15, 2019 to April 15, 2020 ("the Policy"). (*Id.* ¶¶ 9, 43, 50.) VAS filed a corresponding claim. (*Id.* ¶ 35.) AAG analogizes what occurred to "a restaurant business where the restaurateurs were denied access to the property and the perishables spoiled in the interim." (*Id.* ¶ 49.)

Under the Policy, Zurich is required to insure the "direct physical loss of or damage to covered property caused by a Covered Cause of Loss to Property." (R. 1-2 ("Policy") at 10.) The Policy does not define "direct physical loss of or damage." Nevertheless, a "Covered Cause of Loss" is defined as "[a]ll risks of direct physical

---

[3] AAG purchased an assignment of VAS' claims. (R. 1-3.)

loss of or damage from any cause unless excluded." (*Id.* at 65.) Zurich denied the claim because, in its view, COVID-19 had not caused physical damage to VAS' property, and, even if it had, recovery was barred by two of the Policy's exclusions, the "Contamination Exclusion," and the "Law/Ordinance Exclusion." (R. 1 ¶ 42.)

The "Contamination Exclusion" bars coverage for loss or damage caused by "any cost due to Contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy[.]" (Policy at 24.) "Contamination" is defined as "any condition of property due to the actual presence of a virus or other disease causing or illness causing agent." (*Id.* at 65.) The "Law/Ordinance Exclusion" bars coverage resulting from "[l]oss or damage arising from the enforcement of any law, ordinance, regulation or rule regulating or restricting the . . . occupancy, operation or other use. . . ." (*Id.* at 24.)

Following Zurich's denial of coverage, AAG filed a complaint seeking a declaratory judgment in favor of coverage, pursuant to 28 U.S.C. § 2201(a), Count I, and alleging that Zurich breached the insurance contract by denying coverage, Count II. (R. 1.) Zurich filed a motion to dismiss the complaint. (R. 9.)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint only needs to contain factual allegations that are sufficient to "state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-57 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Crescent Plaza Hotel Owner,*

*L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 307-08 (7th Cir. 2021) (citation omitted). "This standard requires that the plaintiff show 'more than a sheer possibility' of liability, but it 'is not akin to a 'probability requirement.'"" *Id.* (quoting *Twombly*, 550 U.S. at 556).

To decide the motion, the Court "review[s] the complaint and all exhibits attached to the complaint" "taking all facts pleaded in the complaint as true," and "construing all inferences in the plaintiff's favor[.]" *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Still, the Court "need not accept as true statements of law or unsupported conclusory factual allegations." *Bilek*, 8 F.4th at 586. Similarly, "a court is not bound by the party's characterization of an exhibit [attached to the complaint] and may independently examine and form its own opinions about the document." *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007).

## ANALYSIS

### I. AAG HAS FAILED TO PLAUSIBLY ALLEGE DIRECT PHYSICAL LOSS.

AAG's claims arise under state law, and the parties agree that Illinois law applies. (R. 9 at 5; R. 18 at 3 n. 2.) "Under Illinois law, an insurance policy is to be construed as a whole, 'giving effect to every provision[.]" *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 331 (7th Cir. 2021). "If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning." *Id.*

Here, as mentioned, the Policy in this case does not define "direct physical loss or damage[.]" The parties agree that the question was decided by *Sandy Point*. (*See*

4

R. 9 at 7; R. 18 at 4.) There, the Seventh Circuit, interpreting Illinois law, "joined four other circuits in concluding that mere loss of use due to COVID-related closures does not constitute 'direct physical loss' when unaccompanied by any physical alteration to property." *E. Coast Ent. of Durham, LLC v. Houston Cas. Co.*, 31 F.4th 547, 549 (7th Cir. 2022) (discussing *Sandy Point*, 20 F.4th at 331). "Since then, three other circuits have joined this consensus, and no court of appeals has held otherwise." *Id.* Illinois state courts are also in agreement. *See, e.g.*, *Ark Rests. Corp. v. Zurich Am. Ins. Co.*, No. 21 C 1147, 2022 WL 2159012, at *4 (Ill. 2022).

AAG alleges that Zurich wrongly denied VAS' claim for coverage because VAS' inability to access its stock constituted a "physical loss." (R.1 ¶¶ 50, 59, 61.) *Sandy Point* held that an access-or-use deprivation constitutes a physical loss only if it causes a "complete physical dispossession." *Melcorp, Inc. v. W. Am. Ins. Co.*, No. 21 C 2448, 2022 WL 2068256, at *2 (7th Cir. June 8, 2022) (discussing *Sandy Point*, 20 F.4th at 331). AAG argues that it has alleged facts consistent with the "complete physical dispossession" exception by claiming that VAS' employees were physically restricted from accessing its time-limited parts by the governmental shutdown orders. (R.1 ¶¶ 23-29; R. 18 at 4-7.)

However, AAG's allegations are belied by the exhibits attached to the complaint, which show that the governmental shutdown orders did not completely bar VAS' employees from accessing its facilities. For instance, AAG claims that "VAS could not access its time-limited inventory," because of the Washington COVID-19 related governmental shutdown. (R. 1 ¶¶ 23-25 ("[W]hen lockdowns in those locales

5

prevented employees from being able to come to work, VAS's employees were barred from accessing VAS's physical supply of goods."), 49.) Yet, the Washington Order shows it did not restrict VAS' employees from accessing its parts. Specifically, as a non-essential business, the Washington Shutdown Order permitted individuals to leave home to carry out "minimum basic operations." (R. 1-4 at 4.) The Washington Shutdown Order defines minimum basic operations as "the minimum activities necessary to maintain the value of the business' inventory." (*Id.*) Thus, despite AAG's claim to the contrary, the Washington Shutdown Order allowed VAS' employees to enter its facilities to maintain the value of its inventory. (*See* R. 1 at 9 ("[T]his was an instance where the sheer deprivation from the time-limited parts not only deprived VAS of those sales but also eroded the value of the inventory itself.")

The same is true of the shutdown order in Boca Raton, Florida:

> All nonessential retail and commercial business locations . . . are ordered closed except to the extent necessary to perform Minimum Basic Operations. "Minimum Basic Operations") means the minimum activities necessary to maintain the value of inventory, preserve plant and equipment condition, [and] ensure security . . . .

(R. 1-5 at 2.) Similarly, the UK guidance AAG attached to its complaint states that the closure orders for retail locations did not apply to "[s]torage and distribution facilities." (R. 1-7 at 3). Because all of these shutdown orders show that VAS' employees were permitted to access distribution facilities in order to maintain the value of VAS' inventory, they "incontrovertibly contradict[]" and thus control over AAG's allegations that the shutdown orders barred VAS' employees from accessing its time-sensitive inventory. (*See* R. 1 ¶ 49); *Bogie*, 705 F.3d at 609.

6

In light of AAG's exhibits (which must control), Zurich argues that this case is indistinguishable from the line of cases following *Sandy Point* that have uniformly rejected characterizing loss of use resulting from COVID shutdowns as physical loss of or damage to property. (R. 9 at 7.) Zurich also argues that, even if AAG could show physical loss caused by a Covered Cause of Loss, the Contamination Exclusion and the Law/Ordinance Exclusion provisions independently bar coverage. (*Id.* at 10.)

In response, first, AAG argues that Zurich has waived any argument that AAG's allegations do not fall within the complete physical dispossession exception. (R. 18 at 4-7.) Next, AAG argues that this case is distinguishable from cases where plaintiffs sought to fall within the complete physical dispossession exception, but failed. (*Id.*) Alternatively, AAG argues that it has alleged physical loss because "the time-limited parts stored in the area VAS was unable to access were spoiled." (*Id.* at 9-11.) Finally, AAG argues that the exclusions do not apply. (*Id.*) The Court considers these arguments in turn.

### A. The Complaint Does Not Plausibly Allege that the Governmental Shutdown Orders Caused Complete Dispossession or Physical Alteration.

Beginning with AAG's waiver argument, the Court is familiar with the principle that failing to respond to an argument results in waiver. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Even if Zurich waived the argument, this cannot save AAG's deficient complaint. The Court cannot ignore that AAG's complaint supports an inference that the governmental orders did not bar VAS' employees from accessing its time-limited stock. Absent plausibly alleged facts supporting an inference that the governmental shutdown orders made "physical

7

entry impossible, thus barring all uses by all persons" AAG's complete physical dispossession theory fails. *Sandy Point*, 20 F.4th at 334-35 ("Sandy Point at all times remained able to perform some dental work, and nothing precluded it from using the property for some other non-dental purpose consistent with the closure orders.").

Moreover, despite AAG's assertion to the contrary, this case is no different from those where the Seventh Circuit concluded that the insured's reliance on the governmental shutdown orders failed to plausibly allege complete physical dispossession. For instance, in *Melcorp*, the Seventh Circuit concluded that the plaintiff had "failed to allege either a physical alteration to the property or a complete physical dispossession." 2022 WL 2068256, at *3. There, the plaintiffs' admission that it "retained access to the property and continued to make use of the refrigeration and freezers at the property" showed that the governmental shutdowns had not caused "physical dispossession or physical alteration of the property sufficient to constitute 'direct physical loss' under the language of the policy." *Id*. AAG asserts that its allegations are distinguishable from *Melcorp Inc.* because "there are allegations of lost access in no less than nineteen paragraphs of the Complaint." (R. 18 at 6.) Yet, as explained, these allegations are "incontrovertibly contradict[ed]" by the exhibits attached to the complaint, and so the exhibits control. *Bogie*, 705 F.3d at 609.

Another example is *Windy City Limousine Company, LLC v. Cincinnati Financial Corporation*. There, the pandemic forced a limousine company to suspend its operations for a time because its premises were exposed to persons who tested positive for COVID-19. No. 21 C 3296, 2022 WL 1965903, at *1 (7th Cir. 2022). The

8

plaintiff argued it was entitled to coverage under the complete physical dispossession exception because it "alleg[ed] that the presence of the virus rendered its business 'effectively inoperable[.]'" *Id.* at *2. The Seventh Circuit rejected this argument. Even if the plaintiffs' "intended operations may have been rendered untenable for a time . . . its premises were not rendered uninhabitable or unsuitable for all other conceivable uses[.]" *Id.* AAG argues that this case is distinguishable from *Windy City* because, there, the plaintiff's theory of deprivation was based on the fact that it could not provide its service, *i.e.* "the limousines could not be driven without drivers[.]" (R. 18 at 5.) But this is a difference without a distinction. Just as in *Windy City*, nothing about the applicable governmental orders rendered VAS' properties "uninhabitable or unsuitable for all other conceivable uses." For all of these reasons, AAG has failed to allege facts within the complete physical dispossession exception.

Alternatively, AAG shifts from arguing that the governmental shutdowns constituted a complete physical dispossession and argues that the closures caused a "physical alteration" because the parts spoiled within that time. (R. 18 at 9-11.) Yet, because the orders allowed VAS' employees to access these parts to maintain their value, the complaint does not support an inference that the closures caused the physical alteration. And, in any event, as discussed in the next section, even if the losses were covered, dismissal is warranted because the Policy contains two exclusion provisions that each independently bar coverage. *See Crescent Plaza Hotel Owner*, 30 F. 4th at 308-09.

### B. The Law/Ordinance Exclusion

Additionally, the Law/Ordinance Exclusion bars Coverage. This exclusion bars recovery for "[l]oss or damage arising from the enforcement of any law [or] ordinance." (Policy at 24.) The exclusion was addressed in *Bradley Hotel Corporation v. Aspen Specialty Insurance Company*. There, the Seventh Circuit held the Law/Ordinance Exclusion barred coverage because the governmental shutdown orders fell within the plain meaning of "law" and "ordinance." 19 F.4th 1002, 1010 (7th Cir. 2021). In response, AAG points to a Central District of California case that disagreed with some of *Bradley*'s rationale. (R. 18 at 11-12.) Yet, as Zurich notes, the Central District of California could not overrule *Bradley*, and this Court is bound to follow Seventh Circuit precedent. (R. 21 at 7-8); *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734 (7th Cir. 1986) (citation omitted) ("Ordinarily a lower court has no authority to reject a doctrine developed by a higher one."). In sum, the coverage provisions and the exclusion language all indicate that AAG's claims for coverage fail. Accordingly, Zurich's motion to dismiss is granted.[4]

### C. Leave to Amend

Now that the Court has dismissed AAG's complaint, it next considers whether to grant Zurich's request to do so with prejudice. (R. 9 at 1.) "[O]rdinarily," "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed[.]" *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786

---

[4] In light of the foregoing analysis, the Court need not reach the issue of whether the Contamination Exclusion also independently bars coverage.

F.3d 510, 519 (7th Cir. 2015). Nevertheless, "[w]here it is clear that the defect cannot be corrected so that amendment is futile," denying leave to amend is proper. *Id.*

Here, the Court struggles to see how AAG can support its claims of "lost access in no less than nineteen paragraphs of the Complaint," when the Washington and Florida shutdown orders allowed their employees to leave home to maintain the value of their inventory. (R. 18 at 6; *compare* R. 1 ¶¶ 23-25, *with* R. 1-4 at 4-5.) Perhaps AAG means reduced or limited access, rather than "lost access." Certainly, AAG's "lost access" allegations cannot refer to the complete dispossession exception as described in *Sandy Point* and its progeny, as that would mischaracterize the shutdown orders. Moreover, even if a physical loss occurred, it was a result of a law or ordinance, and thus an exclusion bars recovery. Nevertheless, the Court affords AAG one more opportunity to amend its complaint to the extent it can do so consistent with Federal Rule of Civil Procedure 11.

## CONCLUSION

For the foregoing reasons, Defendant Zurich American Insurance Company's motion to dismiss [R. 9] is granted; the complaint [R.1] is dismissed. Unless plaintiff files, by May 20, 2024, a proposed amended complaint that states at least one viable federal claim, the Court will enter judgment dismissing with prejudice.

Date: 4/30/2024

JEREMY C. DANIEL
United States District Judge